UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------- x
In re VEECO INSTRUMENTS, INC.       :     Case No.: 7:05-md-01695 (CM)(GAY)
SECURITIES LITIGATION               :
---------------------------------------------------- x
---------------------------------------------------- x
THIS DOCUMENT RELATES TO            :
ALL ACTIONS                         :
---------------------------------------------------- x

**LEAD PLAINTIFF'S CORRECTED REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF MOTION TO COMPEL
DEFENDANTS TO PRODUCE ELECTRONIC DISCOVERY**

**BERGER & MONTAGUE, P.C.**
Sherrie R. Savett
Carole A. Broderick
Phyllis M. Parker
Shoshana Savett
Jeffrey L. Osterwise
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4674

*Lead Counsel for Lead Plaintiff and the Class*

Lead Plaintiff Steelworkers Pension Trust ("Plaintiff") respectfully submits this reply memorandum of law in further support of its motion to compel Defendants to produce to Plaintiff all non-privileged documents of the Individual Defendants, as well as Gary Reifert, Scott Glassman, Larry Karp, and Frances Scally, from August 2004 through March 2005,[1] which are stored electronically on backup tapes and which are responsive to Plaintiff's requests for production of documents. As Judge McMahon ruled in the conference on February 23, 2007, this motion is to be decided "applying the new Federal Rules on electronic discovery." See Transcript of February 23, 2007 conference, Ex. A to Declaration of Phyllis M. Parker ("Parker Decl.") at 18:9-10. Further, Judge McMahon stated that "as I suspect is the case, there is going to have to be a renewed search by the defendants." Id. at 18:14-16.[2]

For several months spanning from the late-summer of 2004 through the winter of 2005, Defendants knew that TurboDisc division controller Bruce Huff had made a variety of accounting errors. In addition, Defendant John P. Kiernan testified that, during that time, he and several key Veeco executives and other employees believed that Mr. Huff made untrue statements about the accounting procedures and controls that he was performing. Shockingly, Defendants have not produced any electronic communication sent or received by the Individual Defendants concerning these disasters at Veeco during the period that these crises confronted the Company and the Individual Defendants. As discussed below, Defendants assert that they have produced numerous pages of documents "relating to" Defendants Rein and Braun, but none of those documents can

---

[1] Plaintiff is limiting the time period of the request that is the subject of this motion, as discussed below at page 4.

[2] Judge McMahon also said that the motion was "going to need to be resolved quickly." See Ex. A, Parker Decl. at 18:13-14.

1

possibly substitute for the communications at the heart of the litigation which Plaintiff has not received. Defendants have not even bothered to describe the contents of those "related" documents because to do so would reveal that their assertion is misleading, if not deceitful. In any case, it is clear that those documents do not substitute for the documents that Plaintiff did not receive – communications to and from the Individual Defendants, made during a critical period at the Company, concerning the accounting disasters that underlie this litigation.

For the entire twenty-two month period covered by Plaintiff's document request, Defendants produced approximately 170 electronic communications sent or received by Defendant Braun (less than 10 per month); approximately 320 electronic communications sent or received by Defendant Rein (less than 15 per month); approximately 145 electronic communications sent or received by Scott Glassman, Veeco's SEC Reporting Specialist (less than 7 per month); and approximately 240 electronic communications sent or received by Frances Scally, Veeco's Manager of Financial Reporting (less than 11 per month). *See* Declaration of Jeffrey L. Osterwise ("Osterwise Decl."). It is inconceivable that, during the entire twenty-two month relevant time period, the CEO and CFO of the company wrote and received so few e-mails, especially during the time when the Company was in a state of admitted crisis. Because the knowledge of Defendants Braun and Rein is a critical element of the claims against them, the failure of Defendants to produce the other e-mails sent to and received by them deprives Plaintiff of critical evidence of Plaintiff's claims.

As is their custom, Defendants attempt to deceive the Court about the nature of their document production in this case. They attempt to suggest to the Court that Plaintiff has received information about the Individual Defendants that is the equivalent of the electronic discovery. *See* Defs. Br. at 7. They state that they have already produced "tens of thousand of pages of

documents...relating to the seven individuals in question." *Id.* Defendants do not explain how a document "relates" to a Defendant, or why that "relationship" has any bearing on Plaintiff's motion. They go on to state that they produced "approximately 6,100 pages concerning Mr. Braun; 20,300 [pages] relating to Mr. Rein; 49,300 [pages] relating to Mr. Kiernan; 25,400 [pages] relating to Mr. Reifert; 15,100 [pages] relating to Mr. Karp; 10,800 [pages] relating Mr. Glassman; and 8,800 [pages] relating to Ms. Scally.." *Id.* and n. 1. Defendants' representation is misleading. Defendants suggest that Veeco's annual reports, SEC filings, proxy materials (which can be obtained from other sources), conference call transcripts, minutes of meetings of Veeco's Board of Directors and Audit Committee, drafts of all of the above, and periodic financial data are the equivalent of electronic communications that provide evidence of Defendants' knowledge. Nothing could be further from the truth. In any case Defendants' argument is irrelevant. Scienter is a critical element of a claim for violation of the federal securities laws. Therefore, evidence on that subject is crucial, and, since documents are not fungible, the production of some communications cannot justify withholding other communications.[3]

Defendants' further argument, that Plaintiff has not proved that the documents stored on the backup tapes are useful, is simply wrong. Those electronic documents will provide the only documentary evidence available of the knowledge of the Individual Defendants beyond the minimal electronic documents received to date.

---

[3] Defendants say that they produced documents on other subjects. Defs. Br. at 7. However, they do not address the issue of Plaintiff's need for documents regarding scienter. Moreover, the notion that the production of some relevant documents excuses the failure to produce other relevant documents is absurd.

3

Defendants' argument, that Plaintiff is not entitled to this discovery because Plaintiff failed to make an earlier request, was disposed of by Judge McMahon during the conference on February 23, 2007, when Judge McMahon ruled that the motion would be decided by "applying the new Federal Rules on electronic discovery" and that, "as I suspect is the case, there is going to have to be a renewed search by the defendants." *See* Ex. A, Parker Decl. at 18:9-10, 14-16. It is regrettable, if not reprehensible, in view of that ruling, that Defendants have argued to the contrary, at such length, in their opposition to this motion. Plainly, at a minimum, this argument must be disregarded.

Defendants' production of documents was based on the search of hard copy files and electronic files maintained on individual computers and Veeco's servers. It is not surprising that this search did not turn up Rein and Braun e-mails of which they were the primary or sole author or recipient. E-mails may well have been deleted from their servers as they often are; only backup tapes contain all responsive e-mails to which Plaintiffs are entitled.

As Defendants are well aware, Plaintiff did not make a "tactical decision" not to pursue restoration of backup tapes. Defs. Br. at 11. On February 11, 2005, Veeco announced to the public that it was conducting an investigation into accounting errors at its TurboDisc division. Defendants are aware that Plaintiff knew that Defendants had searched backup tapes for the documents of TurboDisc's controller (Bruce Huff) and of TurboDisc's general manager from a document produced in discovery, and believed that backup tapes have been searched for other persons, including Defendants, because such searches are normally done when such investigations are conducted. *See* Ex. A, Parker Decl. at 15:9-12.

Since Defendants have asserted, though the declaration of Linda Chan, that they instituted a "litigation hold" to ensure that relevant electronic documents were not transferred to a less

4

accessible format, the costs associated with restoring their backup tapes should not be nearly as great as they have asserted and, therefore, Plaintiff's request is not unduly burdensome to Defendants. Defendants asserted the cost of restoring approximately 45 backup tapes for the time period from July 2003 though April 2005. Not only would part of this period certainly include the time during which the litigation hold was in effect - and therefore restoration of backup tapes is unnecessary - but Plaintiff is also willing to limit its request to restore backup tapes to the time period from August 2004 through March 2005. This should reduce the cost to Defendants to approximately one-third of the cost that they claimed for the longer time period. It is notable that although Defendants speak of a litigation hold, they do not share with this Court the date on which that "hold" was instituted. Defendants' litigation hold should have been instituted no later than January 2005 and, if it was instituted later, Defendants are solely responsible for the cost of restoring backup tapes from January 2005 onward.

Finally, Defendants have, in their opposition to this motion, for the first time, informed Plaintiff and the Court that the estimated cost of this backup tape discovery will cost $124,000. As Plaintiff has sharply limited its discovery requests, reducing them by almost two-thirds, this will greatly minimize the cost of discovery, some of which would not have had to be spent had documents been timely preserved in their then-existing state. The reduced amount pales in contrast to the $800,000 Defendants spent on the investigation of the conduct that gave rise to this litigation.

Dated: March 7, 2007

By:

**BERGER & MONTAGUE, P.C.**

Sherrie R. Savett
Carole A. Broderick
Phyllis M. Parker
Shoshana Savett
Jeffrey L. Osterwise
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4674

*Lead Counsel for Lead Plaintiff and the Class*

414004.wpd

6